**Martin Hoechster and Maria Hoechster, Appellees, v. State Commercial and Savings Bank, Appellant.**

### Gen. No. 27,966.

BANKING—*performance of contract to purchase foreign war bonds during war.* A bank is not liable for funds delivered to it by plaintiff for the purchase of Austrian and Hungarian war bonds in 1916 where the undisputed evidence shows that the bonds were purchased through the bank's regular correspondent in Vienna with reasonable promptness 'in view of war conditions, that no complaint was made by plaintiffs in that respect, that thereafter plaintiffs requested that the bonds be transferred to Budapest and the deposit book showing the transfer delivered to them when it arrived in Chicago, and where the evidence shows that the bank made every effort to complete such transfer prior to the entry of the United States into the war but fails to show whether or not the transfer was ever made and shows that the deposit book was never received by the bank and where it appears that prior to commencement of the action defendant offered to plaintiffs bonds of the same issue and in the same amount as it had purchased, provided any claim for the bonds purchased in Vienna was released.

Appeal by defendant from the County Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Reversed with finding of fact and judgment here. Opinion filed March 13, 1923.

RIEGER & RIEGER, for appellant; GEORGE H. SUGRUE, of counsel.

G. A. BURESH and LOUIS I. GOTTLIEB, for appellees.

Hoechster et al. v. State Commercial & Sav. Bank, 228 Ill. App. 300.

MR. JUSTICE MORRILL delivered the opinion of the court.

This is a suit to recover $666 alleged to have been paid by plaintiffs to defendant on December 11, 1916, to be applied by the latter to the purchase of Austrian war bonds to the amount of 2,500 kronen and a similar amount of Hungarian war bonds. The declaration alleged a failure to purchase and deliver the bonds as agreed. Defendant's affidavit of merits alleged that the original order for the bonds was given by plaintiffs at Chicago, February 8, 1916, in conformity with which defendant purchased the bonds in question, and further alleged a full compliance with the subsequent instructions of plaintiff as to the delivery of said bonds, except in so far as it was prevented from carrying out said subsequent instructions by the state of war then existing in Europe, in which Austria and Hungary were participants. There was a jury trial resulting in a verdict and judgment for $662.50 in favor of plaintiffs, from which defendant has appealed.

The evidence shows that on February 8, 1916, plaintiffs called at defendant's place of business in Chicago and gave the latter a written order of that date to purchase for them Austrian war bonds to the amount of 2,500 kronen and Hungarian war bonds to the same amount, for which defendant executed its interim receipts of that date pending arrival of the bonds from Vienna, where they were to be purchased. As shown by these documents, the amount paid by plaintiffs for the bonds was $662.50, which is the amount of the judgment.

The undisputed evidence, oral and documentary, shows that defendant fulfilled these instructions and purchased the bonds in question through its correspondent in Vienna, with whom it had conducted many similar transactions and with whom it had established credit much in excess of the amount involved. The order was executed and the purchase made with rea-

sonable promptness in view of the disordered state of affairs incidental to the war then existing. No complaint was made by plaintiffs on account of the failure of the Vienna correspondent to forward the bonds, and it seems to have been recognized by all the parties that delay in the mails was to be expected on account of existing conditions.

The evidence further shows that on December 11, 1916, plaintiffs again called at defendant's bank and stated that they expected to go to Europe and requested defendant to cause the bonds to be transferred from Vienna to a bank in Budapest. On that date they surrendered their interim receipts above mentioned and signed and delivered to defendant a written authorization for the transfer of the bonds from Vienna to Budapest, which contained a stipulation to the effect, in substance, that defendant should deliver to plaintiffs the deposit book showing the deposit of the bonds in the Budapest bank as soon as said book arrived in Chicago. The evidence also shows that defendant made every reasonable effort to carry out these instructions and cause this transfer to be made. It sent letters, cablegrams and radiograms for that purpose to Vienna and appealed for assistance to its correspondent in the neutral country of Denmark. The evidence does not show whether or not the transfer was actually made. The deposit book from the Budapest bank never arrived in Chicago. It is a matter of common knowledge that in the following year the United States entered the war and all business communications with Austrian subjects ceased and became unlawful until the war closed. While the war continued no demand of any kind, either for the bonds, the deposit book or the money paid for the bonds, was made by plaintiffs upon defendant, but after the armistice was signed, and sometime in the year 1919, plaintiffs again called at defendant's bank and requested information as to the transaction, which was

given them. Some months later plaintiff Martin Hoechster called on defendant and requested further information, which was given him. Some time prior to the commencement of this action defendant offered to plaintiffs bonds of the same issues and to the same amount as those purchased by defendant, provided the latter released its claims for the bonds purchased in Vienna on their account. That this offer was made is shown by the testimony of defendant's witnesses, and by that of the plaintiff Maria Hoechster, who was the only witness called on behalf of plaintiffs. It was renewed subsequently upon the trial of the case. Mr. Hoechster at the time of the first offer seems to have been willing to accept it, but stated that his wife was unwilling to do so. Nothing further was done about the matter until the action was commenced.

The original undertaking of defendant was to purchase for plaintiffs the Austrian and Hungarian war bonds in question. No instructions were given about the purchase and no time was specified for the delivery of the bonds. Both parties understood that business transactions with Vienna were subject to delay on account of the war and were prohibited after the United States became a belligerent. We are of the opinion that defendant fulfilled its original undertaking by the actual purchase of the bonds through its Vienna correspondent. Plaintiffs had confidence in the strength and integrity of the Austrian and Hungarian governments—otherwise they would not have sought to purchase their securities—and made no complaint because the bonds were not forwarded from Vienna. They seem to have been satisfied that the securities should remain in Vienna until December, 1916, when they asked for their transfer to Budapest on account of the proposed visit of plaintiffs to Europe.

The evidence does not show that the transfer was not made, although it is true that the deposit book

showing the deposit of the bonds in the Budapest bank has never been received. The transfer of the bonds from Vienna to Budapest was not a part of the original transaction and was an undertaking by defendant for which it received no consideration whatever other than a release of the obligation to deliver the bonds in Chicago. In accordance with these subsequent instructions, defendant did everything that it could reasonably have been expected to do. Defendant certainly cannot be held liable for failure to deliver a deposit book which it has never received. *Consentino v. Illinois Surety Co.*, 210 N. Y. 521. Its only agreement in that respect was to deliver the book when it arrived in Chicago.

Plaintiffs have not been damaged by the failure to receive the deposit book showing the deposit of the bonds in the Budapest bank. The collapse of the former government of Austria-Hungary and the financial condition of the present governments of those countries have rendered the bonds in question practically valueless. If plaintiffs wanted bonds of the particular issues purchased on their account, they were given ample opportunity to get them through the tender made by defendant. One bond of a particular issue has no value over another bond of the same issue for the same amount. Plaintiffs, having refused the tender of defendant of bonds of the same issue to the same amount as those purchased by them, cannot rescind their contract and recover the money paid after the bonds have become valueless to them on account of events for which defendant was in no way responsible. The verdict and judgment were contrary to the law and the manifest weight of the evidence.

The judgment of the county court is reversed with a finding of fact and judgment is entered here in favor of defendant.

*Reversed with finding of fact and judgment here.*

BARNES, P. J., and GRIDLEY, J., concur.

American Hide & Leather Co. v. Southern Ry. Co., 228 Ill. App. 305.

Finding of fact. The court finds as an ultimate fact that the defendant is not indebted to plaintiffs on account of the matters alleged in the declaration herein.